**AFFIRM; and Opinion Filed June 21, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00719-CV

### CAMERON MCPHERSON, Appellant
### V.
### BRIAN DAVID RUDMAN, M.D., Appellee

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-05858**

## MEMORANDUM OPINION

Before Justices Evans, Whitehill, and Schenck
Opinion by Justice Schenck

Cameron McPherson appeals the trial court's judgment, following a jury trial, that he take nothing on his negligence claims against Brian David Rudman, M.D. In four issues, McPherson argues (1) a neurologist's testimony should have been disallowed or stricken because Rudman failed to disclose the neurologist's "new opinions"; (2) the neurologist should not have been permitted to testify regarding the cause of McPherson's injury; (3) the admission of the neurologist's testimony probably caused the rendition of an improper verdict and probably prevented McPherson from properly presenting his case to this Court; and (4) without the neurologist's testimony, the jury's verdict was against the great weight and preponderance of the evidence. We affirm the trial court's judgment.

On October 20, 2010, Dr. Charles Cook performed foot surgery on McPherson. The anesthesiologist during surgery was Rudman. After the surgery, Rudman performed a popliteal fossa nerve block which involved placing a "pain pump" via catheter in McPherson's right posterior thigh. When McPherson awoke from anesthesia, he had numbness in his right foot and right lateral lower leg. One of the nurses told McPherson the numbness was "normal," and he was discharged in a splint.[1] On October 22, 2010, McPherson had severe pain on the undersurface of his foot, and he went to the emergency room where the splint was removed, improving the pain. On the evening of October 23, 2010, McPherson's mother removed the pain pump.

In April 2011, Cook referred McPherson to a neurologist, Dr. Norma Melamed, because McPherson was "having neurologic symptoms," and Cook wanted Melamed to evaluate him. McPherson's treatment was ongoing. In May 2013, McPherson filed a lawsuit against Rudman and Cook, who was later nonsuited. McPherson alleged Rudman was negligent in failing to properly install the pain pump and failing to recognize and diagnose harm caused by the pain pump, and McPherson was harmed as a result.

In December 2015, the case went to trial before a jury. Melamed testified that, after initially examining McPherson and taking his medical history, Melamed determined McPherson "clearly had a right sciatic nerve injury." Melamed performed a "nerve conduction EMG" test on McPherson because the EMG was the "only test" that could help in "determining what happened" to McPherson. Melamed considered as possible causes of McPherson's injury (1) placement of the tourniquet, (2) injury to the right sciatic nerve due to puncture or injection of pain medication into the right sciatic nerve, and (3) "compression injury from the cast that was too tight." Melamed "had to entertain all three possibilities, and then go to [her] nerve study and decide was the problem

---

[1] Although some record references use the term "cast," Cook testified he placed a "splint" on McPherson. Cook testified a cast is "circumferential so it doesn't allow for swelling," while a splint "is only a half, so it allows for swelling." We use the term "splint" except where a quoted statement uses the term "cast."

primarily a pressure problem or was primarily an injection of the anesthetic into the nerve." The EMG test enabled Melamed to determine that "the nerve had been pressed on from the outside in" and conclude "we had axonotmesis . . . a pressure injury from the outside in." Melamed also conducted an MRI to "visualize the sciatic nerve" and determine if, "in the back of the knee which is that popliteal fossa area" there was any abnormality resulting from injury when the nerve was injected with anesthetic. Melamed determined the sciatic nerve was normal. In further describing the three possible causes of McPherson's injury, Melamed testified as follows:

> So based on history, examination and most importantly the nerve conduction study, we know for sure it was a pressure injury. We know the level of the injury was in the thigh. It's called the trunk of the sciatic nerve. So No. 1 is the tourniquet. No. 2 it was almost certain impact from the cast because we know that when [McPherson] had the cast released after 48 to 72 hours, he had tremendous relief of pain. So we know it was causing compression because otherwise when it was released it would have been no change in his pain. No. 3 the only issue I can bring about the anesthetic is in any patient there's a chance that the nerves might be sensitive to the anesthetic. Because anesthetic has something in it that can cause the blood vessels to constrict meaning they can get narrow. They can react to the anesthetic that way. So in any patient, if the nerves happened to be sensitive to anesthetic, it could be constrict [sic] of the blood vessels and that could cause additional damage to the nerve. If the nerves had already been damaged because they had been squished from the outside, they're going to be more sensitive to the anesthetic. Squishing causes the blood vessels to get more squishy, constrict. So there is a possibility and it is -- unfortunately that is a risk of anesthetic bathing the nerves, it may or may not have been an additional factor.

Counsel asked Melamed if she had an opinion in reasonable medical probability based on everything she had seen and everything she was trained in whether or not Rudman "got into the nerve and damaged the nerve during the procedure in question more likely than not." Melamed answered, "My opinion that it was not the cause."

On cross-examination, McPherson's counsel questioned Melamed about a deposition scheduled with Melamed in August 2014 and a meeting between Melamed and an attorney from counsel's firm before the scheduled deposition. Counsel asked if Melamed said at the meeting

that she could not "really tell which of those three possible causes you put down were more likely than not the cause" of McPherson's injury. Melamed denied making such a statement.

On re-direct, Melamed testified that, "one or two weeks" before Melamed's scheduled deposition, McPherson's counsel met with Melamed and asked "what [her] opinions were about the case." Melamed "discussed it similarly to now" and got a communication saying the deposition was canceled about a week later. Defense counsel asked what Melamed told McPherson's counsel about her "opinion in reasonable medical probability as to whether or not this man got into this nerve with a needle and catheter and damaged it." Melamed responded as follows:

> I would have said exactly what I'm saying now, but I cannot remember the exact details of my conversation except that what I said -- what I'm saying now is I have to review this level of detail before the deposition. So it was when I really got into the details of the case was before that deposition, so I discussed exactly all of this at our brief meeting, saying that -- that the injection of the anesthetic was not the primary cause. It was recognized at that point that we had the discussion. It was more to this case and the anesthesiologist, and they recognize that there had been a issue with dropping other focus or on this lawsuit.

On re-cross, in response to a question from McPherson's counsel regarding what Melamed said in the August 2014 meeting, Melamed said she did not tell counsel that she "could not decide between the three potential causes as to which was the most likely." Following this question and response, McPherson's counsel passed the witness, and the trial was recessed for the weekend.

On the following Monday, McPherson filed a motion to strike Melamed's testimony. The motion asserted Melamed had never before expressed the opinion that Rudman's insertion of a needle in McPherson's sciatic nerve was not a cause of McPherson's injuries. The motion argued, among other things, that Melamed's opinion should be excluded because it was not properly disclosed, and Melamed was not qualified to express such an opinion.

At the beginning of trial that day, McPherson's counsel reasserted the arguments contained in the motion and made the following statement regarding counsel's reasons for not objecting to Melamed's testimony:

We did not object at the time the question was asked because it was a proper question. We had – when she answered the question to say what this new opinion was, the opinion was already out there to the jury. And we're doing what we can at this point to try to insure that the jury doesn't make a decision in this case based on testimony that is inaccurate and unreliable.

Following argument from defense counsel, the trial court ruled that McPherson had "waived it at this point" and denied the motion to strike.

Following the denial of McPherson's motion to strike Melamed's testimony, the trial court permitted Mark Perrin, one of McPherson's attorneys, to make the following statement before the jury:

I, as one of the attorneys for Cameron McPherson, met with Dr. Melamed in early August 2014. The parties agreed that there was nothing improper or inappropriate about me doing so, just as there's nothing improper and inappropriate about Defense counsel meeting with her in November 2015. The purpose of the meeting was to determine if Dr. Melamed had an opinion whether any of the three potential causes for Cameron McPherson's nerve injury identified by her medical records, those be [sic] tourniquet placement, needle trauma or compression by tight cast placement, was more likely than the others. In that meeting, Dr. Melamed told me that she did not have an opinion as to which of the three potential causes was the most likely. Dr. Melamed further told me that she was not concerned with which of the three was the most likely cause as her only concern was monitoring the extent of Cameron McPherson's nerve injury. Dr. Melamed never told me that it was her opinion that the most likely cause of Cameron McPherson's nerve injury was the tourniquet placement and compression by tight cast placement. Because Dr. Melamed told me that she did not have an opinion as to which of the three potential causes was the most likely cause of Cameron McPherson's nerve injury, I decided it was not necessary to take her deposition as her testimony would not assist the parties in determining the most likely cause of Cameron McPherson's nerve injury and would not provide any useful information beyond that contained in her medical records which the parties had already obtained and reviewed. Therefore, her deposition was canceled. And the reason Dr. Melamed's deposition was canceled was not that her opinions were not favorable to Cameron McPherson's case. The reason the deposition was canceled was because she did not express any opinions that affected the case either way, and was therefore deemed unnecessary. This was the only conversation any of Cameron McPherson's attorneys had with Dr. Melamed. And she had never informed us or the McPhersons of the opinion she expressed in testimony on Friday, December 11th, 2015 regarding the cause of Cameron McPherson's injuries. There was no audio or video of the meeting between me and Dr. Melamed. The meeting was not taken under oath, and there is no recording of it. Prior to the meeting, Doug Perrin sent a letter to Dr. Melamed dated September 19th, 2013 with a draft letter for her to sign on her letterhead to be dated September 20th, 2013 because he had not been able to speak with her

personally. The draft letter read as follows: Dear, Dr. Melamed, enclosed is a draft letter regarding Cameron McPherson's injuries. We do not expect you to criticize any doctors, but we are requesting that you sign a letter which sets out the injuries Cameron had that you treated and the likely cause of those injuries. I have taken the liberty of drafting such a letter to save you time using your reference.

(Reading) If you could complete the letter and give it to me by tomorrow on your letterhead -- letterhead, a faxed copy is fine, that would be very helpful to Cameron. We'd be glad to email you the letter. We do not have your email address. Sincerely, Doug Perrin.

The proposed letter which Doug Perrin asked Dr. Melamed to sign was to be dated September 20th, 2013, and it read as follows: Dear Mr. Perrin, I am a board-certified neurologist. A true and correct copy of my curriculum vitae is attached hereto as Exhibit A.

(Reading) I am familiar with Cameron McPherson's injuries and the treatment he received because I have been his treating neurologist. To a reasonable medical probability, Cameron McPherson suffered hypoesthesia following primarily a right peroneal nerve and to a lesser extent right tibial nerve distribution with a decrease in the right ankle reflex, wasting of the right lower leg, and weakness involving muscles enervated by the tibial and deep and superficial peroneal with involvement of the peroneal nerve greater than the tibial.

(Reading) The injuries he had resulted from tourni -- tourniquet placement and/or pain pump placement in the posterior thigh following ankle surgery. This was my diagnosis when I saw Cameron on April 19th, 2011. And it is my opinions [sic] that the injuries which I treated most likely resulted from the tourniquet and pain plump -- pump placement following the distal tibial procedure he had on October 20th, 2010.

(Reading) I am familiar with the diagnosis and causes of such injuries from a prior experience in treating patients with such injuries. There was no other likely cause of the injuries which Cameron sustained. The Perrin firm did not receive a response from Dr. Melamed. Dr. Melamed did make a handwritten note in chart to her staff on the letter sent to her on September 19th, 2000 -- 2013 which read as follows: Not willing to sign the letter. When it comes time to do deposition, I will be happy to discuss my findings under oath. All the info is in my reports.

Dr. Melamed had never seen Dr. Rudman before her trial testimony. And the other patient of his who Dr. Melamed saw was sent by Dr. Cook following surgery by Dr. Cook in which Dr. Rudman was the anesthesiologist. And there was no finding that Dr. Rudman injured the nerve on that patient.

Defense counsel did not object to this statement and did not cross-examine Perrin. Later that day, the case went to the jury, which answered "No" to the question of whether "the negligence, if any, of Brian David Rudman, M.D. proximately cause[d] the injury in question." This appeal followed.

–6–

In his first issue, McPherson argues Melamed's testimony should have been stricken due to Rudman's failure to disclose Melamed's "new opinions." In his second issue, McPherson argues Melamed should not have been permitted to testify on the cause of McPherson's injuries because she was not qualified to offer her opinions, and her opinions were unreliable. In his third issue, McPherson argues the admission of Melamed's testimony probably caused the rendition of an improper verdict and probably prevented McPherson from properly presenting his case to this Court. In his fourth issue, McPherson argues that, without Melamed's testimony, the jury's verdict was against the great weight and preponderance of the evidence. All of McPherson's issues thus attack the admission of Melamed's opinion regarding causation or address a situation in which Melamed's opinion is not considered.

We review a trial court's rulings on the admissibility of evidence for an abuse of discretion, including rulings on the reliability of expert testimony. *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Even if a trial court errs by improperly admitting evidence, reversal is warranted only if the error probably caused the rendition of an improper judgment. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007). In determining whether erroneous admission of evidence is harmless in that it did not probably cause the rendition of an improper judgment, a reviewing court must evaluate the whole case from voir dire to closing argument, considering the "state of the evidence, the strength and weakness of the case, and the verdict." *See Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 871 (Tex. 2008) (quoting *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 841 (Tex. 1979)).

To preserve error for appellate review, the complaining party must timely and specifically object to the evidence and obtain a ruling. TEX. R. APP. P. 33.1(a); *McShane*, 239 S.W.3d at 235. Error is waived if the complaining party allows the evidence to be introduced without objection. *Id.* Here, McPherson did not object to Melamed's testimony until it filed its motion to strike days later. We conclude the trial court did not err in determining that McPherson's delay in objecting to Melamed's testimony waived any error. *See Gharda USA*, 464 S.W.3d at 347.

Further, the erroneous admission of evidence is harmless if it is merely cumulative. *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004). Here, Melamed's testimony was not the only basis on which the jury could find that Rudman was not negligent. Dr. Trigg McClellan, McPherson's designated orthopedic surgeon, testified that nerve injury could occur in the absence of negligence. Dr. Srdjan Nedeljkovic, McPherson's designated anesthesiologist, testified that complications from popliteal nerve blocks can and do occur when the standard of care has been fully met. Dr. Bradley James Oetman testified that patients can have complications that are difficult and problematic for them without the health care provider having been negligent. Oetman testified, "My opinion is that [Rudman] was not negligent and that he followed typical, usual, ordinary practice of anesthesiologists majority." Thus, Melamed's testimony that Rudman was not negligent was cumulative of other testimony that undermined the assertion that Rudman's negligence was a cause of harm. Therefore, its admission was harmless. *See id.*

To the extent McPherson argues Melamed's opinions were a surprise, the record shows Melamed refused to sign a letter in August 2014 stating that McPherson's injuries most likely resulted from the tourniquet and pain pump. Melamed testified she never represented to McPherson's attorneys prior to trial that she "could not decide between the three potential causes as to which was the most likely." Instead, as Perrin mentioned in his statement, Melamed made a handwritten notation that she was "Not willing to sign the letter. When it comes time to do

deposition, I will be happy to discuss my findings under oath. All the info is in my reports." In the rest of his statement, Perrin was permitted to testify to his theory that Melamed's opinion presented at trial was "new" because she had never before expressed the opinion that Rudman's actions did not injure McPherson. However, Perrin's own statement showed that Melamed refused to agree with McPherson's theory of the case as contained in a proposed letter, and she reserved her opinions – based on the information in her reports – until the deposition, which McPherson's counsel ultimately canceled.

McPherson also argues, in part, that Melamed's testimony was outside the scope of her designation as a witness. McPherson cites Rudman's designation of Melamed that said Melamed "will express the opinion . . . that there are several possibilities as to the cause of [McPherson's] injury and that it is difficult to say which cause is probable, if any." McPherson argues Melamed's testimony does not fall within this designation because Melamed claimed to know exactly what caused McPherson's nerve injuries. Similarly, though Melamed was designated to testify "in accordance with [her] medical records and reasonable inferences therefrom," McPherson argues Melamed did not testify within this designation. The record, however, shows that Melamed did testify that there were three possible causes: the tourniquet, the splint or "cast," and the anesthesia. While Melamed testified these "several possibilities" existed, she determined, based on the EMG test contained in her records, that Rudman's insertion of a needle into McPherson's sciatic nerve did not cause his injuries. This testimony was consistent with her prior handwritten notation that "All the info is in my reports." Having reviewed McPherson's issues, we conclude all of them lack merit. We overrule McPherson's first, second, third, and fourth issues.

We affirm the trial court's judgment.

/David J. Schenck/

DAVID J. SCHENCK
JUSTICE

160719F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CAMERON MCPHERSON, Appellant

No. 05-16-00719-CV     V.

BRIAN DAVID RUDMAN, M.D.,
Appellee

On Appeal from the 162nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-13-05858.
Opinion delivered by Justice Schenck.
Justices Evans and Whitehill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee BRIAN DAVID RUDMAN, M.D. recover his costs of this appeal from appellant CAMERON MCPHERSON.

Judgment entered this 21st day of June, 2018.